Mr. Donovan, you may proceed. Thank you, your honor, and may it please the court and opposing counsel. By dismissing bedrock constitutional principles, the government urges this court to adopt a different discovery rule in criminal cases for machines than it does that applies to human witnesses. Imagine a human informant provides police a bag of white powder, along with a report stating the powder is cocaine, detailing the date and time it was obtained, who it was obtained from, and where and how the transaction occurred. If charges were later issued against the person from whom this human witness says they obtained the cocaine from, the person would undoubtedly, unquestionably be entitled to know the informant's identity and many things about their background and reliability so that the truthfulness and claims can be fully investigated, excuse me, and tested upon cross-examination. Here, only because torrential downpour receptor, or TDR, is a computer program and not a human witness, was Mr. Owens denied the same ability to investigate and challenge the key transactional witness against him. This court cannot allow such a double standard. And make no mistake, TDR was the key transactional witness in the case against Mr. Owens. Running autonomously, 24 hours a day, 7 days a week, it reported that it identified and targeted an IP address, later linked to Mr. Owens as sharing a contraband file, it connected and initiated a download of that contraband file, and it created detailed logs about how it accomplished that download. All of this was done without any information. It charged Mr. Owens with distribution of that exact file, despite the fact it was not later recovered in the search warrant that law enforcement executed at his home. This anomaly of the missing file is significant, because even as the government's expert admitted, if TDR has a bug or other flaw, it is possible it could falsely report a file transfer. Mr. Owens must have the right to fully investigate and challenge TDR, but he was denied that opportunity by the district court's ruling. Several constitutional rights are implicated here. First, all criminal defendants facing a loss of liberty have the right to present a complete defense under California v. Trombetta. This has to include probing any possible bias that TDR has, evidence of which is admissible to impeach at trial and is never a collateral issue, as this court made clear in U.S. v. Vasquez. The government does not really rebut that all software has bugs, so that having access to fully explore how TDR works and may have falsely reported the file transfer was crucial and necessary to our defense. Instead, the government and the district court rely on the government experts Ipsy Dixit to brush aside these concerns. But this court has warned, and I quote, an expert who supplies nothing but a bottom line supplies nothing of value to the judicial process. Mr. Donovan, can I pause you on that just for a second? As I read the district court opinion, and I went back and I read Mr., is it Erdley? Mr. Early or Erdley? I believe it might be Erdley. Erdley? Okay. I read his testimony, and he seemed to my eye to opine at a very high level of confidence that the file path information that was recovered through a forensic analysis of your client's computer matched that of that movie file that was downloaded through the use of the TDR program. Is that a fair reading of the district court's finding? I mean, I think that's a fair reading of what he testified to. We don't agree with that. The district court relied upon the testimony, did it not, to make a finding in at least two different places that the forensic analysis of the computer confirmed that the same video, the same video, was downloaded? So the district court did make, I believe, findings on that. We disagree with that. We address that in our reply brief. Basically, it's indicators. So the file, again, was not recovered. That's undisputed. No, right. There's fragments or something. You call it, all it is is fragmentary. Well, and the government called it only fragmentary evidence in their brief. So basically, there's three indicators. One is that this BitComet program had been installed on his computer, but of course, having this program installed does not indicate any particular downloaded file occurred. So that's a red herring. That doesn't really mean much of anything. The second indication is that a fragment of a torrent file was located by Mr. Ederle. But as again, even the government admits, a torrent is just an instruction or a map of how to download a file. It's not the file itself. So again, that's really not real relevant. And then lastly, Mr. Ederle talked about that there was a suspiciously titled file that was most recently used by an unspecified application on an unspecified date and time that indicated perhaps it might have been this file. That's it. Again, the file's not located. These indicators are weak at best, and the district court was incorrect. No, I know the file's not located. I get that part of it, right? But you have a forensic analysis done of the machine, and I'm looking at Ederle's testimony on page 82 of the transcript. He says, a file with the exact same file name as the one sent from the computer to law enforcement is there. And it's dated May 22nd at 138 in the morning. So that's the testimony, at least as I read it, that the district court relied upon to make the factual finding. And so the question I have for you, I mean, I know it's a long windup, but the question I have for you is, what did you proffer, through your own expert or otherwise, to demonstrate clear error on that finding? I mean, other than just the argument that this is not the file, and that it's at best an indicator, we don't. I mean, again, it's not the file. It's not contraband. These are, at best, that may be a file with the same name was open, but again... Look, I think Mr. Owens has dealt you a hard hand. And one of the issues that makes the hand hard is this fact. If this fact is not here, perhaps he has a basis to argue that, you know, I don't know where this movie file came from that they got through TDR, but I never had it. It was never on my computer. It was planted. There's entrapment. You know, I don't know what he would argue. But the presence of that fact really pokes a hole in that balloon in a pretty big way. And that's why I think, and maybe I'm mistaken, and you can convince me I am. I mean, my mind is open on it. But with that fact in place, it's really hard for me to see how the district court abused its discretion in not affording you access to the program. Well, I see I'm in a rebuttal. I do want to respond briefly. So first, I don't think this should be an abuse of discretion review. This should be de novo. Because of the constitutional issues involving, again, the right to present a complete defense and the confrontation rights that we cite in our briefs, I don't think abuse of discretion is the correct standard. But to respond more specifically to your concern, again, we have, I think, put together a pretty convincing argument here that all computer software has bugs. Therefore, there's a possibility that TDR doesn't act how the government says it acts. And again, even the government expert admitted that a false positive is possible. And because TDR is the only witness, the transactional witness here, there's no doubt that TDR is how they're going to prove that he got this file supposedly twice at these certain dates and times, based only on the logs the program generates, that we should have the right to investigate how TDR works and operates. And if it's accurate and reliable as it says it is, if it performs as functioned, if its output is correctly interpreted by the agents and officers that eventually look at it. And this fragmentary evidence, again, as the government itself says is fragmentary, these fragmentary indicators, I don't see how that counteracts those fundamental bedrock constitutional rights. I'm happy to answer further. I see I'm down to 30 seconds. I don't want to go over my time here. Is there any other concerns I can address for now? Mr. Donovan, what extent of discovery would you have with the TDR? Your Honor, it's limited. And that's another key point here. The government makes it seem like we're asking for the source code and all these hash values and everything. We want to be able to do what's called a packet capture. A packet capture is where we're allowed to observe the traffic on the network to see if one file, and it can be a non-contraband file, it doesn't have to be a contraband file, if one file goes from computer A to computer B in a single source download as advertised. And keep in mind, a single source download is different than how BitComet normally operates. Normally BitComet is pulling pieces of the same file from multiple different computers. That's the default operation. Here they're saying TDR modifies that by ensuring only from A to B the entire file. And again, that's reflected in the logs that are generated that supposedly prove that. We want to be able to observe that independently, investigate that, test that, review that, and not just take the government's word for it, because that's what we're left with right now. And the only way that they try to counter their assertions is by saying, well, we got some fragmentary indicators that he had the file anyway, so it doesn't matter. This is not a garden variety discovery dispute. This is a discovery dispute that implicates key constitutional rights, that if this was a human witness, we would absolutely be able to investigate and have access. Mr. Donovan, it's your position, you just want to make a test run unconnected to the facts of this case? Well, I mean, we'd be willing to, I guess, have any access we could get to the program. We proposed a test run for this, again, packet capture in a non-contraband setting, obviously just because of the nature of these files. But, you know, any access and any ability to investigate and test this program would be welcome. Thank you. Thank you, counsel. Mr. Coney? Good morning. Actually, good afternoon. May it please the court, my name is Jonathan Coney. I appear on behalf of the United States. This is an appeal from a discovery ruling, and it's subject to review for an abuse of discretion. To prevail on its motion to compel and obtain the TDR software, Owens had to do two things. He had to establish Rule 16 materiality, and he had to rebut the government's invocation of the law enforcement investigative privilege. The district judge conducted an evidentiary hearing, two rounds of briefing, and issued a detailed written opinion explaining his reasons for denying the motion. In order to reverse, you would have to find that the district judge abused his broad discretion, and specifically, that reasonable people cannot differ about the judge's ruling. That's a pretty steep hill for my opponent to climb. He clearly wants to constitutionalize the discovery issues in this case so as to obtain de novo review. The government could not find a single case involving similar issues where a court reviewed the matter, the discovery matter, de novo. Of course, every criminal case has a constitutional backdrop, and I appreciate that. But this was a discovery ruling at bottom, and it should be reviewed as such. I'd like to respond to some specific points that came up during my opponent's presentation, and I think the most important may be the presence on the defendant's computer of evidence that during the relevant timeframe, he had this movie file on his computer. I used the word fragmentary in my brief, and after hearing Mr. Donovan repeat it back to me three or four times, I'm not sure fragmentary is exactly the right word. The very, very experienced government witness who testified at the evidentiary hearing actually used the term artifacts. But I think if he were here, he would say there are artifacts showing, and I think the gist of his testimony was these are artifacts showing that the file was there at the relevant time. Certainly if only a fragment had been present at one time, that would be a slightly different matter. So again, there were the hash value matches, and there was evidence that the file with exactly the same file name, and I won't repeat it here, it's in our brief, it's a rather explicit filing, that that had been recently accessed. And then too, there was evidence that the torrent had been present on the computer for several, a couple of years, I guess, since 2016. And Judge Scudder is right that the district judge was very aware of this distinguishing fact and relied upon it as part of his ruling. He mentions it at the bottom of page 125 of the evidentiary hearing transcript and on page 9 of his opinion. This is frankly what distinguishes this case from a lot of the cases relied upon by Mr. Donovan, notably the Budziak case from the Ninth Circuit and the Gonzalez case, a district court opinion from that circuit. There were some other issues in Budziak, which I tried to point out in our brief, suggesting that there might even have been something illicit about the government's approach in that case. There was no similar proffer here. All we had was a kind of a vague claim that maybe there was a false positive because of a bug in the software. This was never really developed by the defense expert at the evidentiary hearing, you know, how, what kind of bug would cause that kind of error in light of Detective Erdely's testimony about the 226 matches that would be required in order for the download to occur. He's got to go further than that, doesn't he? He's got to go, he's got to say that whatever software defect he believed was in place also accounts for the substantially equivalent file path being on his own hard drive. That's correct. I mean, I suppose it's, you know, we all know from our own experience that two or three different files can have the same file name, but that one is quite long and quite explicit and had been recently accessed, I think on the 22nd of May or whenever it was that the second download occurred. So yes, Your Honor, you're right. Yeah, I mean, I just, I think it may be a different case. I don't know. It's just, it's not this one. If you have, you have the absence of that file path information, you have zero child pornography on that computer and the defendant comes in saying, look, I have no idea how this got there. I've either been entrapped or this has been planted or something. Well, as in Budziak, there was evidence that the government software may have overridden the share folder, the wall that's around the share folder. There was nothing like that in the defense proffer and nothing that was really developed at the evidentiary hearing either, despite, of course, having access to the defendant's computer and fairly extensive knowledge of how BitTorrent works and BitTorrent client software works, which actually leads me to another point that I would like to make, and that is the defense proposed perhaps limited access to TDR of some kind. Where in benign or non-contraband torrents would be used to do a test run. The problem with granting access to TDR is not just the library of torrents. Which ones does the government use and which ones doesn't it use? But it's also the software, the software's ability to perform single source downloads, identify an IP address, and identify it geographically as well, are all sort of sensitive aspects of the software that the government doesn't want to disclose, absent a really compelling need or some sort of suggestion that there's a problem. There was no... Mr. Koenig, Mr. Koenig, how can a defendant establish materiality, ever materiality, under your argument that this has to be absolutely protected? Are you concerned about some sort of reverse engineering by a defendant's expert to destroy the efficacy of the TRD? Yes. It's a theoretical possibility. Then how will you ever allow for inquiry? How do you meet the materiality standard? Well... With the government's argument? Sure. If there weren't such sort of strong evidence on the other side, Judge Griesbach relied on the simplicity of the software, where the extremely accurate nature of hash value matching, which the other side conceded, by the way, and again, evidence that the file had been present on the computer. If those factors hadn't been present, the need, the defendant's need would have been stronger. And when you come to the privileged part of the analysis, likewise, it would weigh more heavily in the balance against the government's interest in protecting this information. What about an in-camera inspection by a district judge to the exclusion of the parties, if a request is made by a defendant? Sure. I think in-camera or a protective order would have been reasonable options here, but they're not options that the judge was required to pursue in the exercise of his pretty considerable discretion over discovery matters. Well, this is not a typical... I appreciate the abuse of discretion standard, but Mr. Koenig, this is a 21st century issue. This is not a 20th century issue. And I'm just trying to establish how high a wall we have here and what would be the limiting principles under which... I mean, this is a case where the file wasn't found on the computer, right? That's correct. And you charge distribution, not possession here. Yes, sir. I mean, I'm not questioning the authority of the government to do that, but, you know, it's a little... It's a more serious charge, absolutely. And certainly the file was not present in the sense of you couldn't go to that computer and click on a file path or an icon and bring up the movie file. As for limiting principles, I think they are fact-driven and they're just not present in this case. There's no real question marks that would lead a judge even to say, I really need to take a look at this in camera, or, you know, there's some risk involved, but I'm going to do this with a protective order. There was really no showing by the defense of any special considerations such as you had in Budziak and the other cases that would have warranted probing a little further. So as far as a limiting principle, I can't give you a legal limiting principle, but some of the factors, the factual aspects of this case that we've discussed show that he didn't really go beyond speculation in trying to demonstrate materiality. He said, well, you know, computers sometimes have bugs, software programs sometimes have bugs, and, you know, maybe there was a false positive here. The whole district court found that it was protected by law enforcement investigating privilege, a term I haven't heard actually too often, but with the computer age, that's pretty broad because it's a matter of looking into the methods that the government uses. Is that correct? Yes, sir. And it's certainly a privilege that the court should think carefully about in every case where it comes up, but we think that it's appropriate to consider, in addition to the requirements of Rule 16, the broader implications of turning material over in discovery that could compromise the government's ability to investigate these crimes. Again, it's a balancing test. That's why it's entrusted to the discretion of the trial judge in the first instance. I guess I would just conclude by saying perhaps it isn't necessary to say a great deal about the scope of the law enforcement privilege in this particular case, because from the government's perspective, there was just no real showing of materiality to begin with under Rule 16. Mr. Donovan, we've given Mr. Koenig a number of questions. I'll give you another minute if you have any proposing you want to make. Thank you, Your Honor. I do have a few, and I appreciate the extra time. To address Judge Scudder's concerns, I would point the panel's direction to Exhibits 4, 5, and 6 at the evidentiary hearing that was referenced earlier. Exhibit 4, again, shows that BitComet was installed. Again, BitComet's just a program that all this runs on that does not show any indication of a particular file. Exhibit 5 is, again, the torrent fragment. Again, not the file itself, just part of a torrent that supposedly was located. And then Exhibit 6, and I think this is what Judge Scudder has the most concern about, is the most recently used file list, which does have the name of this file. It does not even say what program opened it. It has a registry date of May 22nd. I'm not sure that actually means, though, when the file was supposedly opened or used by a program. And that's it. Again, this is very fragmentary and very incomplete. So I believe that the error that the court committed was basically scuttling the defense at an evidentiary hearing when we were there to get access to this program, not to prove or disprove that he had this file. So that's the error I would point to. As far as materiality, my opponent says we didn't make that showing. I think on pages 9 to 10 of our brief, we make a detailed materiality showing. And then last point is on the law enforcement privilege. The only case that I can locate in the Seventh Circuit that talks about that is Delwood. Delwood was a civil case, not a criminal case. There was not constitutional liberty interest at stake. And the decision in Delwood itself talked about how it would be limited in that context. I mean, basically, it's different when it's necessary to secure the constitutional and other recognized legal rights of suspects and defendants. So for all these reasons, we should have access to this. It's of constitutional dimension. I believe it's state and overall review. And as Judge Fong points out, if we can't get it in this case, where he's charged with the file that they say they downloaded that was not later recovered and be able to defend against those allegations, nobody can ever get this. And therefore, really, all these rights are meaningless. Thank you. Thank you, Mr. Donald. Thanks to both counsel and the cases taken under advisement.